Martha CORDOBA, Plaintiff,

v.

Edward J. McELROY, etc.,
et ano., Defendants.

Iwamoto, Keiko, Plaintiff,

v.

United States Immigration and
Naturalization Service, et
ano., Defendants.

Nos. 99 Civ. 11178(LAK),
99 Civ. 11372(LAK).

United States District Court,
S.D. New York.

Jan. 3, 2000.

Spiro Serras, Wilens & Baker, P.C., New York City, for Plaintiff.

Emre Ozgu, Barst & Mukamal, New York City, for Plaintiff.

James F. LoPrest, Assistant United States Attorney, Mary Jo White, United States Attorney, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiffs in these cases seek to compel the District Director of the Immigration and Naturalization Service ("INS") and the INS to act on their allegedly long-pending applications, pursuant to Section 245 of the Immigration and Nationality

Act, as amended (the "Act"),[1] for adjustment of status. The Court *sua sponte* directed the plaintiffs to show cause why the petitions should not be dismissed for lack of subject matter jurisdiction. The cases were consolidated for oral argument.

## I

According to the allegations of her complaint, which are accepted as true for present purposes, plaintiff Martha Cordoba is a citizen of Colombia who resides in New York. She filed an application with the Attorney General for an adjustment of her immigration status to that of a lawful permanent resident of the United States. Although the complaint does not state when the application was submitted, Cordoba maintains that the "normal period prescribed ... for ruling on adjustment of status applications has passed" and seeks an order compelling the INS, as the Attorney General's designee, to "rule upon" her application.

Plaintiff Keiko Iwamoto allegedly is a native and citizen of Japan who last entered the United States on a student visa in August 1996. She claims that her husband is a lawful permanent resident of the United States and that in 1992 he successfully filed a so-called "second preference" petition on her behalf to classify her as the spouse of a lawful permanent resident for immigrant visa purposes, pursuant to Section 203(a)(2)(A) of the Act, as amended.[2] Based on the visa petition, Iwamoto filed an application with the Attorney General on November 16, 1996—only three months after entering the United States on her temporary student visa[3]—for a discretionary adjustment of her immigration status to that of a lawful permanent resident. She was interviewed in connection with that application in September 1997. Like Cordoba, Iwamoto claims that the INS has not acted with sufficient alacrity in passing upon her application for adjustment of status and seeks an order of this Court requiring that it do so.[4]

## II

Both Cordoba and Iwamoto seek to invoke the Court's jurisdiction under Section 279 of the Act[5] and the Mandamus and Venue Act of 1962.[6] Cordoba in addition relies upon the general federal question statute[7] and the Administrative Procedure Act ("APA").[8]

### A. Section 279 of the Act

■ Section 279 of the Act provides as follows:

"The district courts of the United States shall have jurisdiction of all causes, civil

1. 8 U.S.C. § 1255.

2. 8 U.S.C. § 1153(a)(2)(A).

3. In order to obtain her student visa, Iwamoto presumably persuaded a U.S. consular officer that she did not intend to emigrate to the United States and intended to return to Japan. *See* 8 U.S.C. § 1101(a)(15)(F)(I) (defining "student" as an alien "having a residence in a foreign country which [s]he has no intention of abandoning ... who seeks to enter the United States temporarily and solely for the purpose of pursuing ... a course of study"); 22 C.F.R. § 41.61(b)(1)(iv) (1998) (alien eligible for student visa if consular officer satisfied that "[t]he alien intends, and will be able, to depart upon termination of student status"); *Lok v. INS*, 681 F.2d 107, 109 & n. 3 (2d Cir.1982) ("students may not legally form the intent to remain in the United States under the terms of their visa"). The government

thus suggests that Iwamoto improperly secured her nonimmigrant student visa in order to avoid having to wait in Japan until an immigrant visa became available.

4. The complaint in fact seeks an order requiring the INS to grant the requested adjustment. At oral argument, however, Iwamoto's counsel conceded that the decision whether or not to grant her application lies within the discretion of the Attorney General and that she seeks only an order requiring the INS to rule upon it, one way or the other.

5. 8 U.S.C. § 1329.

6. 28 U.S.C. § 1361.

7. *Id.* § 1331.

8. 5 U.S.C. §§ 551–59, 701–06.

and criminal, brought by the United States·that arise under the provisions of this subchapter. It shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States. Notwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended. No suit or proceeding for a violation of any of the provisions of this subchapter shall be settled, compromised, or discontinued without the consent of the court in which it is pending and any such settlement, compromise, or discontinuance shall be entered of record with the reasons therefor. Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers." [9]

As is readily apparent, the contention that jurisdiction lies under this statute is entirely frivolous. These are actions by private plaintiffs against the government. The statute creates jurisdiction only over actions by the government and specifically excludes cases such as this.[10]

### B. The APA as a Basis of Jurisdiction

■ Cordoba alleges also that the APA creates an independent basis of subject matter jurisdiction. This contention, however, was foreclosed by *Califano v. Sanders.*[11]

### C. Mandamus, Relief in the Nature of Mandamus, the APA and Federal Question Jurisdiction

The question whether this Court has jurisdiction to entertain plaintiff's applications for mandamus or, as Iwamoto styles it, mandatory relief under the Mandamus and Venue Act, Section 1361 of the Judicial Code, or the federal question statute requires that the issue be placed in historical perspective.

Mandamus was, and in many jurisdictions still is, a writ that issues from a court of superior jurisdiction to a body, officer or court of inferior jurisdiction commanding the performance of a specified act. The writ itself, however, was abolished in federal district courts in 1938 by Rule 81(b) of the Federal Rules of Civil Procedure. Although the rule nonetheless allows an aggrieved party to seek "[r]elief heretofore available by mandamus ... by appropriate action ...," [12] in practice relief in the nature of mandamus in district court actions seeking judicial review of administrative action has been uncertain and limited. For more than a century, only the federal courts in the District of Columbia had jurisdiction to issue mandamus, and other courts frequently took this to prohibit mandatory relief by means of injunction or declaratory judgment.[13] In any case, courts confronted with requests for such relief frequently applied the complex doctrine that previously had limited the availability of the writ of mandamus, including the principles that mandamus would not issue to control the exercise of discretion or in circumstances in which the plaintiff's right was uncertain.[14]

---

9. 8 U.S.C. § 1329.

10. *Mesallum v. INS*, 99 Civ. 3997(LAK) (S.D.N.Y. filed Oct. 14, 1999); *Cobas v. INS*, 99 Civ. 9378(LAK) (S.D.N.Y. filed Sept. 30, 1999).

11. 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

12. FED. R. CIV. P. 81(b).

13. 4 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE §§ 23:7–23:8 (2d ed.1984) (hereinafter DAVIS); Clark Byse and Joseph V. Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action*, 81 HARV. L.REV. 308, 308–11 (1967).

14. *See, e.g., Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218–19, 50 S.Ct. 320, 74 L.Ed. 809 (1930); LOUIS L. JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 180–83 (1965).

A series of statutory developments commencing in 1946 might have been expected to alter this situation. Section 10 of the APA,[15] enacted in that year, created a right to judicial review of administrative action except where precluded by statute or where the matter is committed by law to agency discretion. Moreover, it specifically authorized such review, in the absence of another procedure specified by statute, by "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction."[16] Then Congress, in 1962, enacted the Mandamus and Venue Act, Section 1361 of the Judicial Code, which conferred jurisdiction over suits for relief in the nature of mandamus on the district courts generally and thus abolished the historical limitation of such actions to the District of Columbia.[17] Finally, Congress in 1976 and 1980 abolished the requirement of a minimum amount in controversy in the general federal question statute,[18] first with respect to suits against the government and then entirely.

Although one leading commentator, Professor Davis, has argued that the cumulative effect of these changes should have been to make mandatory relief available in district courts whenever an agency has ignored or violated the law or failed to perform a duty that it is obliged to perform, irrespective of the label used to characterize the relief,[19] the results in practice have not always been thus. In dealing with complaints seeking mandatory relief with respect to administrative action, courts frequently have ignored the plain language of Section 10 of the APA—which provides that the reviewing court "shall ... compel agency action unlawfully withheld"—and instead applied traditional mandamus doctrine, with all its complexities.[20] Although some courts of appeals have taken a somewhat more expansive view,[21] the Supreme Court, in its most recent decisions in this area, has continued to apply traditional mandamus principles, without regard to the APA.[22] Nevertheless, the Second Circuit has not addressed the tension between the APA and traditional mandamus principles, and the issue was not raised in the Supreme Court in those cases that it has decided on the merits. In consequence, this Court regards itself as obliged to apply the Judicial Code and the APA as Congress enacted them in the absence of controlling contrary authority.

The general federal question statute confers jurisdiction on this Court over actions "arising under" federal law.[23] An action arises under a federal statute where the statute creates or is a necessary element of the cause of action or the plaintiff would prevail if the statute were construed one way and lose if it were construed another.[24] Cordoba here suggests that this is precisely her situation.

**15.** 60 Stat. 243, *now codified at* 5 U.S.C. §§ 701–06.

**16.** *Id.* § 703.

**17.** *See* 4 DAVIS § 23:8, at 159–60.

**18.** 28 U.S.C. § 1331.

**19.** *See* 4 DAVIS § 23:10.

**20.** *Id.* § 23:9.

**21.** *Id.* §§ 23:13–23:14.

**22.** *Pittston Coal Group v. Sebben,* 488 U.S. 105, 121–23, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988) (reversing grant of mandamus on ground that agency to which relief had been directed did not have "a clear nondiscretionary duty" to reopen case in which it had applied incorrect legal standard); *Heckler v. Ringer,* 466 U.S. 602, 616–17, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (applying common-law mandamus principles to deny relief for failure to exhaust administrative remedies).

**23.** 28 U.S.C. § 1331.

**24.** *E.g., Franchi v. Manbeck,* 947 F.2d 631, 633 (2d Cir.1991); *Stone & Webster Eng. Corp. v. Ilsley,* 690 F.2d 323, 328 n. 4 (2d Cir.1982), *aff'd without consideration of the point sub nom. Arcudi v. Stone & Webster Eng. Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983).

Section 6 of the APA[25] provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." Cordoba contends that the INS has violated this statute and thus seemingly brought herself within federal question jurisdiction. But the matter is not necessarily that simple.

As a general proposition, a complaint that turns on a federal statute, as does Cordoba's, comes within the federal question jurisdiction. The consequence of a plaintiff's failure to plead facts making out its right to relief is a dismissal for failure to state a claim upon which relief may be granted, not a dismissal for want of jurisdiction.[26] Where, however, "such a claim is wholly insubstantial and frivolous" or "patently without merit," the court lacks jurisdiction over the subject matter.[27] Accordingly, the Court is obliged to consider whether there is any colorable basis for Cordoba's claim that the INS has violated Section 6 of the APA.

■ Cordoba's complaint alleges only that the "normal period prescribed ... for ruling on adjustment of status applications has passed...." But no federal statute or regulation "prescribes" any "normal period" for acting on such applications, much less requires the INS to act within a limited period of time.[28] Her claim therefore must be that the time that has elapsed to date has been unreasonable, although her complaint does not allege when she filed her application.

It is unclear whether the passage of time alone, whatever the period happens to be in Cordoba's case, in the current circumstances is sufficient to make out even a colorable claim of violation of Section 6. In *INS v. Miranda*,[29] the petitioner applied for adjustment of status to that of permanent resident alien, an application that depended upon the availability to him of an immigrant visa. At the same time, his wife, a United States citizen, applied for such a visa on his behalf. The INS failed to act on the wife's application for an 18 month period, during which the marriage ended and the former wife withdrew her application. The petitioner's application for adjustment then was denied for want of the immigrant visa. Petitioner, however, argued that the INS was estopped to deny his application because the 18 month delay in processing his wife's application for an immigrant visa for him constituted affirmative misconduct. But the Supreme Court rejected the contention. It pointed out that the only "indication of negligence" was the delay itself, said that an 18 month delay was not unwarranted in the absence of evidence to the contrary, and stressed the fact that 206,319 immediate relative petitions were filed in the year in which the wife had submitted her application.[30]

The government contends that the circumstances here are even more compellingly in its favor than those relied upon in *Miranda*. Here, as in *Miranda*, there is no claim of negligence or misconduct beyond the simple fact of the delay itself. Moreover, the government contends that there is a nationwide backlog of 2 million naturalization applications, despite an approval rate of 80,000 per month, and that there were 265,827 applications for immigration relief pending before the INS's New York District Adjudications Branch

**25.** 5 U.S.C. § 555(b).

**26.** *Bell v. Hood*, 327 U.S. 678, 682–84, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

**27.** *Id.*

**28.** *Messalum, supra; Kupferberg v. INS*, No. 99 Civ. 0507(LAK) (S.D.N.Y. filed July 7, 1999); *Alomari v. Reno*, No. 97 Civ.

6837(DAB), 1997 WL 724815, *3 (S.D.N.Y. Nov. 19, 1997); *cf. Sze v. INS*, 153 F.3d 1005, 1007–08 (9th Cir.1998) (no time limit for investigation of background of naturalization applicant).

**29.** 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982).

**30.** *Id.* at 18 & n. 4, 103 S.Ct. 281.

as of September 1999, but only 166 adjudications officers, including supervisors, to act upon them. Although it has not put the matter in just these terms, the essence of its position is that there has been no violation of Section 6 of the APA because it has proceeded "within a reasonable time," having "due regard for the convenience and necessity of the parties," created by the flood of immigration applications and the constraints on the resources available to the INS in dealing with it.

Although the government's statistics seem impressive, they do not necessarily carry the day. To begin with, the government's analogy to *Miranda* is imperfect. That case dealt with the question whether the petitioner there had established affirmative misconduct on the part of the government, a burden that arguably does not rest on the plaintiffs here. Perhaps plaintiffs here might establish facts which, notwithstanding the volume of cases before the INS, would make out a nonfrivolous claim of a violation of Section 6 of the APA in their individual cases.

Moreover, the Court is not comfortable in relying on the government's statistics at this stage of the proceedings. In passing on subject matter jurisdiction disputes which depend upon facts outside the complaint, courts in this Circuit apply by analogy the standards that govern motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, including the principle that a jurisdictional dismissal in these circumstances must rest on competent evidence and the absence of a genuine dispute as to any material fact.[31] The government has submitted no affidavit or other admissible evidence in support of its claim of burden on the INS. Indeed, it relies in some part on newspaper articles. Further, plaintiffs arguably were not on clear notice that they were obliged to present any evidence bearing on their claim that the delays in their cases, in all the circumstances, were unreasonable. As it is not now clear that plaintiffs cannot establish the existence of a substantial claim of violation of Section 6, the Court is not now prepared to dismiss for want of jurisdiction, although plaintiffs always bear the burden of alleging and proving jurisdiction, and the government may challenge their efforts by appropriate motion.[32]

## III

Bearing in mind the fact that leave to amend to assert jurisdiction must be freely granted,[33] the Court has considered all arguments in favor of the existence of subject matter jurisdiction irrespective of whether they were alleged in the complaints and, indeed, has considered arguments advanced only on behalf of Cordoba in declining to dismiss Iwamoto's complaint. As it is not clear on the present record that plaintiffs cannot establish the existence of subject matter jurisdiction, the orders to show cause why these actions should not be dismissed for lack of subject matter jurisdiction are discharged without prejudice to further challenges to jurisdiction on the basis of a more complete record. Nonetheless, the well-pleaded complaint rule ultimately requires that the basis for jurisdiction appear on the face of the complaint.[34] Accordingly, plaintiffs are directed to file amended com-

---

**31.** *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1010–11 (2d Cir.1986).

**32.** Accordingly, this Court's previous holdings that jurisdiction does not exist under the Mandamus and Venue Act, 28 U.S.C. § 1361, in cases such as this—which were rendered in cases in which no claim of federal question jurisdiction by virtue of an alleged violation of Section 6 of the APA was made—are not inconsistent with this disposition. *See Messalum, supra; Cobas, supra; Kupferberg, supra.*

**33.** 28 U.S.C. § 1653.

**34.** *E.g., Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Fleet Bank, N.A. v. Burke,* 160 F.3d 883, 885–86 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999); *Marcus v. AT & T Corp.,* 138 F.3d 46, 52 (2d Cir.1998).

plaints not later than January 18, 2000 clearly and succinctly stating the precise basis for their contentions that this Court has subject matter jurisdiction and that they are entitled to the relief they seek.

SO ORDERED.