Joann **BARTOLINI,** and Jacques **Latif, Plaintiffs,**

v.

John **ASHCROFT, U.S. Attorney General, and Steven Farqhuarson, District Director, U.S. Immigration and Naturalization Service, Hartford, Connecticut, Defendants.**

No. 3:01CV02323(AWT).

United States District Court, D. Connecticut.

Sept. 30, 2002.

Kevin Ebrahim Dehghani, New Haven, CT, for Plaintiffs.

Lisa E. Perkins, U.S. Atty's Office, Hartford, CT, for Defendant.

### RULING ON MOTION TO DISMISS

THOMPSON, District Judge.

The plaintiffs, Joann Bartolini ("Bartolini") and Jacques Latif ("Latif"), bring this action seeking an order to compel the United States Immigration and Naturalization Service ("INS") to adjudicate Latif's application for adjustment of his immigration status. The defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The defendants' motion is being granted, for the reasons set forth below, pursuant to Fed. R.Civ.P. 12(b)(6).

### I. BACKGROUND

The plaintiffs' factual allegations, as set forth in their complaint, are taken as true for the purposes of this motion. In addition, certain other background facts included in the defendants' papers were not disputed, although the plaintiffs contend some of those facts are irrelevant.

Latif last entered the United States on January 16, 1997 pursuant to a nonimmigrant "visitor" visa. He was authorized to stay in the country until July 15, 1997. On May 29, a month and a half before the

expiration of his authorized stay, Latif married Wanda Navedo ("Navedo"), a United States citizen. On the basis of his marriage to Navedo, Latif submitted to the INS on July 13 an application, on Form I–485, for adjustment of status to legal permanent resident; it accompanied a Petition for Alien Relative ("Form I–130"), by Navedo on behalf of Latif.

Pursuant to INS regulations, the INS scheduled an interview with Latif for March 31, 1998, and notified him of the same. Latif returned the notice to the INS informing it of his inability to keep the appointment because he was "not available at the stated date due to work." (Defs.' Mem. Mot. to Dismiss at Ex. A–5). The INS rescheduled the interview to July 21, 1998, and notified Latif of the change. Latif again returned the papers and indicated that he and his wife were "unable together to make this appointment." (Defs.' Mem. Mot. to Dismiss at Ex. A–5). The INS subsequently rescheduled the interview to September 17, 1998. Latif never informed the INS of his inability to attend this interview; he simply failed to appear at the scheduled time. Consequently, pursuant to 8 C.F.R. § 103.2(b)(13), his application for adjustment of status was deemed abandoned, and it was denied on February 11, 1999.

Latif's marriage to Navedo was legally dissolved in Waterbury, Connecticut on October 26, 2000. On November 9, 2000, Latif was married to Joann Bartolini in Las Vegas, Nevada. On the basis of his second marriage, Latif executed a second application for adjustment of status to lawful permanent resident on or about December 29, 2000, which was received on January 8, 2001.[1] Bartolini simultaneously executed a Form I–130 petition for submission to the INS, and Latif's Form I–485 sought adjustment of status on the basis of Bartolini's petition. Thus, it appears that the plaintiffs are seeking that the INS adjudicate both the I–130 petition and the I–485 application.

The INS scheduled an appointment to take Latif's fingerprints on March 6, 2001, but for unknown reasons that appointment was rescheduled to May 17, 2001. The INS scheduled the adjustment of status interview for July 3, 2001 and both Latif and Bartolini appeared on that date. On September 27, the INS requested that Latif forward his birth certificate, advising him that it was not included with his application as required by INS procedures; the plaintiffs state that this request was duplicative because they had already submitted a copy of Latif's birth certificate with the I–485 application.[2] In any event, Latif complied with the request and the INS received the birth certificate on October 11, 2001. Approximately one month later, in a letter dated November 12, the plaintiffs' counsel contacted the INS and urged that it "promptly notify us of your decision in this case ... [and that] we always have the option of filing a writ of mandamus in the federal court and will be forced to do so if we do not hear a prompt response from you within two weeks from the date of this letter." (Compl. at Attach. C).

---

1. The court notes that in all documents predating the filing of this second application for adjustment of status, Latif spelled his last name "Ltaif." His passport, visa, birth certificate, certificate of dissolution of the marriage with Navedo, certificate of marriage to Bartolini, as well as all his signatures on all the documents submitted indicate that his last name is, in fact, spelled "Ltaif." However, his second application for adjustment of status and certain documentation submitted therewith have been filed under the name "Latif."

2. It is undisputed, however, that the INS had taken steps to process Latif's application (conducting an interview and taking fingerprints) before requesting a copy of Latif's birth certificate.

The present action was filed about one month later, on December 11, 2001.

The defendants represent that during the processing of Latif's application for adjustment of status, the INS became aware of credible information indicating that Latif may have been previously married in Lebanon, and he had not disclosed any such marriage in his application. If that information is correct, Latif would be ineligible for permanent resident status due to his failure to disclose the information and because his current marriage may have been undertaken in bad faith for the purpose of gaining permanent resident status in the United States. The INS represents that it is currently attempting to verify this information through diplomatic channels.

## II. *STANDARD OF REVIEW*

When deciding a motion to dismiss under Rule 12(b)(1) or (6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed under Rule 12(b) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329 (2d Cir.1997); *see also Hishon v. King & Spalding*, 467 U.S.

69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.*, 34 F.Supp.2d 130, 131 (D.Conn.1999) (quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990)(citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). "[T]he standards for reviewing dismissals granted under 12(b)(1) and 12(b)(6) are identical." *Moore v. PaineWebber Inc.*, 189 F.3d 165, 169 n. 3 (2d Cir.1999).

## III. *DISCUSSION*

### A. *12(b)(1)*

■■ The plaintiffs contend that this court has subject matter jurisdiction pursuant to the mandamus statute, 28 U.S.C. § 1361, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and pursuant to 28 U.S.C. § 1331 because the case presents a federal question. The court concludes that subject matter jurisdiction exists based on 28 U.S.C. § 1331 in conjunction with 5 U.S.C. § 555(b).[3]

---

**3.** The APA itself does not confer jurisdiction permitting federal judicial review of agency action. *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). Likewise, the declaratory judgment statute is not an independent basis for subject matter jurisdiction. *Zheng v. Reno*, 166 F.Supp.2d 875, 878 (S.D.N.Y.2001). The analysis with respect to the mandamus statute is unclear. It is clear that matters solely within the INS's discretion are not reviewable under 28 U.S.C.

§ 1361. *Id.* at 880 (finding that the INS's decision as to whether to schedule an interview as part of the adjustment process is discretionary); *Sadowski v. U.S.*, 107 F.Supp.2d 451, 453 ("While the application of mandamus requires the existence of a clear non-discretionary duty owed to a petitioner, no such obligation to [plaintiff] exists in this matter, rendering the application of [the mandamus statute] inapposite."). However, those cases are not on point because under 5 U.S.C.

■■ Federal question jurisdiction may be exercised over a claim only if (1) the claim turns on an interpretation of the laws or Constitution of the United States and (2) the claim is not patently without merit. *Zheng v. Reno,* 166 F.Supp.2d 875, 880 (S.D.N.Y.2001); *see also Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (a case may be patently without merit so as to justify dismissal for want of jurisdiction). In the instant case, the federal question presented by the plaintiffs turns on the interpretation of section 6 of the APA.[4] Section 6 of the APA provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C.A. § 555(b)(West 1996). The test for determining whether a claim is "patently without merit" is "whether the right claimed is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *New York Dist. Attorney Investigators Police Benevolent Ass'n, Inc. v. Richards,* 711 F.2d 8, 10 (2d Cir.1983) (alteration in original). "In deciding the issue of jurisdiction it is not necessary to determine whether the cause of action is one on which the plaintiff could actually recover." *Id.*

■ Here, the plaintiffs' claim cannot be said to be patently without merit. The right claimed by the plaintiffs' in their complaint is the right to have the INS adjudicate Latif's application for adjust-ment of status within a reasonable time as required by Section 6 of the APA.

### B. *12(b)(6)*

■ Section 6 of the APA provides that an agency must conclude matters before it "within a reasonable time." 5 U.S.C.A. § 555(b). "In determining reasonableness, [courts] look to the source of the delay—*e.g.,* the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Zheng,* 166 F.Supp.2d at 880 (alteration in original) (citing *Reddy v. Commodity Futures Trading Comm'n,* 191 F.3d 109, 120 (2d Cir.1999)).

■ The INS took steps within a reasonable time to process Latif's application. Less than two months after receiving Latif's application, the INS scheduled a date to take Latif's fingerprints. Within six months after receiving Latif's application, the INS held an adjustment of status interview with Bartolini and Latif. Two months after the interview, the INS followed up by requesting that Latif forward his birth certificate, which was necessary for the adjudication of his application for adjustment of status.

Latif's application for adjustment of status had not been a simple one to begin with. The petition filed on his behalf by Bartolini was filed about two and a one-half years after Navedo had filed the first petition, and Navedo's petition had been based on a marriage entered into shortly before the expiration of Latif's authorized stay in the United States. Navedo and

§ 555(b) the INS does not have discretion as to whether to adjudicate an adjustment of status application.

4. In their complaint, the plaintiffs state only that the defendants' actions are in violation of the "Administrative Procedures Act, 5 [U.S.C.] § 701 *et seq.*" (Compl.¶ 18). However, they specifically invoke section 6 of the APA in their objection to the defendants' motion to dismiss. (Pls.' Obj. at 13).

Latif had failed to cooperate with the efforts by the INS to adjudicate Navedo's petition and Latif's accompanying application for adjustment of status. Latif failed to give the INS any explanation for skipping the September 1998 interview; he simply did not appear for the scheduled interview. Latif's 1997 application was deemed abandoned, and in October of 2000 his marriage to Navedo was dissolved. Then, two weeks later Latif married Bartolini in Las Vegas. These circumstances would put an adjudicating agency on the alert for fraud, and made Latif's application a complicated one.

The fact that the INS became aware of credible information that Latif had another marriage in Lebanon made the adjudication of Latif's application for adjustment of status an even more complicated matter. The INS is investigating this information through diplomatic channels, and the time it takes to complete the investigation will depend on the time it takes foreign sources to provide the necessary information.

Given the particular facts and circumstances of this case, the delays that have taken place are clearly reasonable, and the complications arise to a significant degree from the suspicious circumstances created by Latif's own actions. It is logical for the INS to investigate information about a prior marriage in Lebanon through diplomatic channels, and it is to be expected that such an investigation will result in a significant delay. Thus, accepting as true the plaintiffs' allegations, the facts and circumstances of this case could not support a finding that the defendants are in violation of section 6 of the APA.

Accordingly, the complaint in this case fails to state a claim upon which relief can be granted, and it should be dismissed.

## IV. *CONCLUSION*

For these reasons, Defendants' Motion to Dismiss (Doc. # 7) is hereby GRANTED.

It is so ordered.