**Dae Hyun KIM, Plaintiff,**

v.

**John ASHCROFT, U.S. Attorney General, Edward McElroy, District Director, United States Bureau of Citizenship & Immigration Services, Defendants.**

No. 04 Civ. 1639(SAS).

United States District Court, S.D. New York.

July 27, 2004.

---

**76.** Pls. Rule 19(a) Opp. at 13.

Robert Andre Cini, Howard Rosengarten, PC, New York, New York, for Plaintiff.

Frank James Loprest, Jr., Assistant United States Attorney, New York, New York, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Dae Hyun Kim brings this action against John Ashcroft, Edward McElroy, and the United States Bureau of Citizenship & Immigration Services ("CIS") (collectively, "defendants"), seeking to compel the adjudication of his application for an adjustment of immigration status. Kim claims that defendants have unreasonably delayed his application in violation of the Administrative Procedure Act (the "APA").[1] Defendants now move to dismiss the action for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.[2] For the reasons set forth below, defendants' motion to dismiss is denied in its entirety.

### I. FACTS

Kim, a Korean citizen, entered the United States in September 1991, using a visitor's ("B–2") visa. He married Yoo Mee Koh, a naturalized U.S. citizen, on June 12, 2000.[3] Approximately two months later, on August 23, 2000, Kim filed a "Form I–485," seeking an adjustment of his immigration status to that of a lawful permanent resident pursuant to section 245(a) the Immigration and Nationality Act (the "INA").[4]

In connection with this application, Mary Piano, a "District Adjudications Officer" ("DAO") interviewed the Kims on August 15, 2001. Piano then told them that she needed to "review the file with her supervisor."[5] When the Kims did not hear from her by January 2002, Mr. Kim's attorney wrote a series of letters to Piano and various Immigration & Naturalization Service ("INS") supervisors, requesting review or reassignment of the case.[6] Again, no action was taken. Kim alleges that at the time his Form I–485 was filed (August 2000), other applications requesting adjustment of immigration status were

---

1. 5 U.S.C. § 701 et seq.

2. See Fed.R.Civ.P. 12(b)(1), (6).

3. See 8/23/00 Form I–130 relating to Yoo Mee Kim (née Koh), Ex. A to Complaint ("Compl."). This form is necessary to petition for an immediate relative immigrant visa.

4. 8 U.S.C. § 1255(a); see also Compl. ¶ 2; 8/23/00 Form I–485 for Dae Hyun Kim, Ex. B to Compl.

5. Compl. ¶ 9.

6. See id. ¶ 11; see also 1/22/02 Letter from Eric Andrew Horn, counsel for Kim to Piano; 2/25/02 Letter from Horn to Loretta Wilhite, INS supervisor; 4/29/02 Letter from Horn to Gilles, INS supervisor; 6/5/02 Letter from Horn to Wilhite; 7/23/02 Letter from Horn to Agatha Stewart, INS supervisor; 9/12/02 Letter from Horn to Stewart; 11/8/02 Letter from Horn to Steve Rosina, INS supervisor; 1/8/03 Letter from Horn to Rosina, Ex. E to Compl. Pursuant to the Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135 (Nov. 25, 2002), the INS has ceased to exist as an independent agency. The matters relevant to these proceedings, previously handled by the INS, now fall within the authority of the CIS.

being adjudicated by the District Director in approximately twelve to eighteen months.[7]

On March 1, 2004, Kim filed a Complaint, naming Ashcroft (Attorney General of the United States), McElroy (District Director for the New York District of the CIS), and the CIS as defendants. Kim seeks to "compel action" on his Form I-485, alleging that defendants "are improperly withholding action on said application to [his] detriment."[8]

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[9] When the defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff.[10] However, "where evidence relevant to the jurisdictional question is before the court, 'the district court ... may refer to [that] evidence.' "[11] Therefore, "[i]n resolving the question of jurisdiction, the [ ] court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."[12] The consideration of materials extrinsic to the pleadings does not convert the motion into one for summary judgment.[13]

### B. Rule 12(b)(6)

"Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint *only* if it is clear that no relief could be granted under *any* set of facts that could be proved consistent with the allegations.' "[14] Thus, a plaintiff need only plead " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[15] Simply put, "Rule 8 pleading is extremely permissive."[16]

At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' "[17]

**7.** *See* Compl. ¶ 10.

**8.** *Id.* ¶ 1.

**9.** *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

**10.** *See Robinson v. Government of Malaysia,* 269 F.3d 133, 140 (2d Cir.2001) (quotation marks and citation omitted).

**11.** *Id.* (alterations in original) (quoting *Makarova,* 201 F.3d at 113).

**12.** *Luckett v. Bure,* 290 F.3d 493, 496–97 (2d Cir.2002).

**13.** *See CCS Int'l Ltd. v. United States,* No. 03 Civ. 507, 2003 WL 23021951, at *2 (S.D.N.Y. Dec. 24, 2003).

**14.** *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (emphasis added) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

**15.** *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)).

**16.** *Wynder v. McMahon,* 360 F.3d 73, 77 (2d Cir.2004).

**17.** *Phelps v. Kapnolas,* 308 F.3d 180, 184–85 (2d Cir.2002) (per curiam) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)).

■ The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." [18] When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.[19]

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Kim alleges that this Court has subject matter jurisdiction pursuant to the APA, the federal question statute, the Declaratory Judgment Act, and the Mandamus and Venue Act.[20] Because I find that subject matter jurisdiction exists pursuant to the APA in conjunction with the federal question statute, I do not address the other jurisdictional grounds.[21]

#### 1. Jurisdictional Principles

■ The federal question statute confers jurisdiction on the district courts over actions "arising under" federal law. Specifically, section 1331 provides that "[t]he district courts shall have original jurisdic-

tion of all civil actions arising under the Constitution, laws, or treaties of the United States." [22] "An action arises under a federal statute where the statute creates or is a necessary element of the cause of action or the plaintiff would prevail if the statute were construed one way and lose if it were construed another." [23] This has been interpreted to mean that federal question jurisdiction exists where: "(1) the claim turns on an interpretation of the laws or Constitution of the United States and (2) the claim is not 'patently without merit.' " [24]

■ The APA "itself does not confer jurisdiction on a district court to review the decision of an administrative agency." [25] Thus, "plaintiffs seeking specific relief are given the right to sue the government in a federal court by the [APA] but the subject matter jurisdiction basis is the federal question statute." [26] As such, where a plaintiff alleges that the defendant violated the APA, the court may exercise subject matter jurisdiction pursuant to section 1331. For purposes of this motion, the key provision is section 6 of the APA, which states, in relevant part, that "[w]ith due regard for the convenience and neces-

---

**18.** *Saunders v. Coughlin*, No. 92 Civ. 4289, 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994).

**19.** *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002).

**20.** *See* Compl. ¶ 5; *see also* 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1361 (Mandamus and Venue Act); 28 U.S.C. § 2201 (Declaratory Judgment Act).

**21.** I note, however, that it is well established that the declaratory judgment statute "is not an independent basis for subject matter jurisdiction in the district courts." *Zheng v. Reno*, 166 F.Supp.2d 875, 878 (S.D.N.Y.2001) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)); *see also Karan v. McElroy*, No. 02 Civ. 6678, 2003 WL 21209769, at *1

(S.D.N.Y. May 23, 2003). As such, it is not surprising that in his papers opposing this motion, Kim no longer asserts that section 2201 confers subject matter jurisdiction.

**22.** 28 U.S.C. § 1331.

**23.** *Cordoba v. McElroy*, 78 F.Supp.2d 240, 243 (S.D.N.Y.2000).

**24.** *Batista v. INS*, No. 99 Civ. 2847, 2000 WL 204535, at *3 (S.D.N.Y. Feb.22, 2000) (quoting *Bell v. Hood*, 327 U.S. 678, 683–85, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

**25.** *Zheng*, 166 F.Supp.2d at 878.

**26.** 14A Charles Alan Wright, Arthur C. Miller & Edward H. Cooper, Federal Practice and Procedure § 3659, at 51 (3d ed.1998).

sity of the parties or their representatives and *within a reasonable time,* each agency shall proceed to conclude a matter presented to it." [27]

#### 2. Application of Jurisdictional Principles

■ Kim submits that defendants' violation of section 555(b) brings this action within the ambit of the federal question statute.[28] Defendants counter that an "adjustment of immigration status is entirely discretionary with the Attorney General and his delegates ... and Chapter 7 of the APA, governing judicial review, specifically exempts from APA jurisdiction review of any action committed to agency discretion by law." [29] Defendants add that "Kim simply ignores that judges in this District have consistently declined to exercise jurisdiction over claims substantially similar to his under the APA." [30]

■ Defendants' arguments fail for several reasons. *First,* defendants correctly note that the decision of whether to grant or deny an adjustment application is wholly discretionary.[31] However, Kim is not requesting judicial review of an adverse adjudication rendered by defendants; nor is he seeking to compel them to grant his petition.[32] Rather, he is asking this Court to compel defendants to make *any* decision. Whether to *adjudicate* an adjustment application is not discretionary, but governed by section 6 of the APA, requiring the CIS to take action on a matter presented to it "within a reasonable time." [33]

Defendants' second argument is also unavailing. Defendants cite numerous cases for the proposition that judges in this District "consistently" find jurisdiction lacking over claims "substantially similar" to that asserted by Kim.[34] But these cases

---

**27.** 5 U.S.C. § 555(b). I refer to this provision as either "section 6 of the APA" or section 555(b). Although the Complaint broadly claims the APA, 5 U.S.C. § 701 *et seq.,* as the basis for jurisdiction, Kim specifically invokes section 6 of the APA in his opposition papers. Accordingly, I assume that his jurisdictional arguments are predicated on this provision.

**28.** *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.Opp.") at 4–5.

**29.** Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss ("Reply Mem.") at 3 (quotation marks and citations omitted).

**30.** *Id.* at 4.

**31.** *See infra* text accompanying note 45.

**32.** *See* Pl. Opp. at 8 ("Plaintiff is not seeking to have the court grant his I–485 application. Ironically, plaintiff would be in a better position if his I–485 adjustment application were denied since he could then re-file a second I–485 adjustment application before either the

former INS or an Immigration Judge in removal proceedings.").

**33.** 5 U.S.C. § 555(b); *see also Bartolini v. Ashcroft,* 226 F.Supp.2d 350, 353–54 n. 3 (D.Conn.2002).

**34.** Reply Mem. at 4; *see also* Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Defs.Mem.") at 11–12 (citing *Zheng,* 166 F.Supp.2d at 880–81; *Sadowski v. INS,* 107 F.Supp.2d 451, 453 (S.D.N.Y.2000); *Maldonado–Coronel v. McElroy,* 943 F.Supp. 376, 381 (S.D.N.Y.1996); *Rahman v. McElroy,* 884 F.Supp. 782, 787 (S.D.N.Y.1995); *Riley v. Gantner,* No. 03 Civ. 2835, 2003 WL 22999487, at *4 (S.D.N.Y. Dec.22, 2003); *Karan,* 2003 WL 21209769, at *1; *Vladagina v. Ashcroft,* No. 00 Civ. 9456, 2002 WL 1162426, at *4 (S.D.N.Y. Apr.8, 2002); *Yilmaz v. McElroy,* No. 00 Civ. 7542, 2001 WL 1606886, at *3 (S.D.N.Y. Dec.17, 2001); *Wang v. Reno,* No. 01 Civ. 1698, 2001 WL 1150343, at *2 n. 1 (S.D.N.Y. Sept. 27, 2001); *Ortiz v. INS,* No. 99 Civ. 0705, 2000 WL 728145, at *2 (S.D.N.Y. Jan. 18, 2000); *Batista,* 2000 WL 204535, at *3; *Cobas v. INS,* No. 99 Civ. 9378, 1999 WL 1627349, at *1 (S.D.N.Y. Sept.30, 1999); *Zheng v. McEl-*

are distinguishable for several reasons. *First,* many of them involve plaintiffs seeking either judicial review of INS/CIS decisions denying adjustment applications or to compel a favorable decision by the INS/CIS.[35] *Second,* some of these actions were dismissed for reasons other than lack of subject matter jurisdiction, or were otherwise factually distinguishable.[36] *Third,* even in those cases where the plaintiffs sought relief similar to that requested by Kim—*i.e.,* to compel *action* on an adjustment application—the plaintiffs *did not* allege subject matter jurisdiction on the basis of section 555(b) and the federal question statute.[37] Because it is well established that jurisdiction must be

pled on the face of the complaint, these cases are distinguishable.[38] Notably, only one of the cases cited by defendants—*Batista*—presents "substantially similar" factual circumstances. In that case, Batista complained of an unreasonable delay in the adjudication of his adjustment application in violation of, *inter alia,* the APA. The court exercised subject matter jurisdiction under section 555(b), finding that although Batista's claim was meritless, it was not "patently" so.[39]

Thus, judges have not "consistently" declined to exercise subject matter jurisdiction over cases such as that brought by Kim. To the contrary, when faced with similar circumstances, courts have found

*roy,* No. 98 Civ. 1772, 1998 WL 702318, at *5 (S.D.N.Y. Oct.7, 1998)).

**35.** *See Sadowski,* 107 F.Supp.2d at 453 (requesting judicial review of the INS's denial of Sadowski's adjustment application); *Riley,* 2003 WL 22999487, at *1 (claiming right to judicial review of the CIS's denial of petition for adjustment of status); *Karan,* 2003 WL 21209769, at *1 (seeking to compel an adjustment in immigration status to lawful permanent resident); *Zheng,* 1998 WL 702318, at *1 (requesting judicial review of INS's denial of adjustment application).

**36.** *See, e.g., Zheng,* 166 F.Supp.2d at 877 (seeking mandamus and declaratory judgment relief to require the INS to schedule a discretionary interview regarding an adjustment of immigration status); *Rahman,* 884 F.Supp. at 783 (involving motion for injunctive relief claiming that INS acted arbitrarily in its scheduling of interviews in connection with adjustment applications); *Vladagina,* 2002 WL 1162426, at *4 (granting dismissal on mootness grounds); *Yilmaz,* 2001 WL 1606886, at *3 (suing to compel the INS to exercise its discretion to adopt policies allowing for agency action on his application prior to the INS's receipt of the CIA background check); *Maldonado–Coronel,* 943 F.Supp. at 380–81 (involving request to compel expedited review of adjustment applications where court assumed it possessed subject matter jurisdiction and resolved the case on other grounds). Notably, a federal court may no longer "hypothesize subject-matter jurisdic-

tion for the purpose of deciding the merits." *Batista,* 2000 WL 204535, at *2.

**37.** *See, e.g., Wang,* 2001 WL 1150343, at *2 ("While some Courts in this District have found jurisdiction in factually similar cases under the federal question statute and the APA if plaintiff alleges that the time elapsed before the interview has been 'unreasonable,' Ms. Wang has not asserted a claim under the APA as combined with the federal question statute."); *Ortiz,* 2000 WL 728145, at *1 (claiming that the INS unreasonably delayed the adjudication of his application for adjustment of his immigration status but failing to assert jurisdiction under section 6 of the APA); *Cobas,* 1999 WL 1627349, at *1 (asserting jurisdiction solely on the mandamus statute).

**38.** *See Fleet Bank, N.A. v. Burke,* 160 F.3d 883, 886 (2d Cir.1998) ("[The well-pleaded complaint rule] requires a complaint invoking federal question jurisdiction to assert the federal question as part of the plaintiff's claim."); *cf. Cordoba,* 78 F.Supp.2d at 245 n. 32 ("[T]his Court's previous holdings that jurisdiction does not exist under the Mandamus and Venue Act, 28 U.S.C. § 1361, in cases such as this—which were rendered in cases in which no claim of federal question jurisdiction by virtue of an alleged violation of Section 6 of the APA was made—are not inconsistent with this disposition.").

**39.** 2000 WL 204535, at *4.

that alleging a violation of section 6 of the APA brings the action within federal question jurisdiction as long as the claim is not "wholly insubstantial and frivolous" or "patently without merit."[40] In other words:

> As a general proposition, a complaint that turns on a federal statute ... comes within the federal question jurisdiction. The consequence of a plaintiff's failure to plead facts making out its right to relief is a dismissal for failure to state a claim upon which relief may be granted, not a dismissal for want of jurisdiction. Where, however, "such a claim is wholly insubstantial and frivolous" ... the court lacks jurisdiction over the subject matter. Accordingly, the Court is obliged to consider whether there is any colorable basis for [a plaintiff's] claim that the INS has violated Section 6 of the APA.[41]

■ Thus, this Court must decide whether Kim's claim is "patently without merit." "The test for determining whether a claim is 'patently without merit' is 'whether the right claimed is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy .... [I]t is not necessary to determine whether the cause of action is one on which the plaintiff could actually recover.' "[42] Kim claims a right to have the CIS adjudicate his adjustment application within a reasonable time, as required by section 6 of the APA. He alleges that the delay (about forty-two months) from the submission of his application is unreasonable.[43] Because it cannot be said that this claim is patently without merit, this Court has subject matter jurisdiction.

## B. Failure to State a Claim

### 1. Regulatory and Statutory Background

Adjustment of immigration status is governed by section 245(a) of the INA, which allows "otherwise illegal aliens" an opportunity to adjust their status to become lawful permanent residents.[44] It provides, in relevant part, that:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is

---

40. *Cordoba,* 78 F.Supp.2d at 244 (quoting *Bell,* 327 U.S. at 682–84, 66 S.Ct. 773) ("As it is not now clear that plaintiffs cannot establish the existence of a substantial claim of violation of Section 6, the Court is not now prepared to dismiss for want of jurisdiction ...."); *see also id. Batista,* 2000 WL 204535, at *4 ("Although [Batista's] claim is meritless ... it is not 'patently' so. Accordingly, I will exercise § 1331 jurisdiction over plaintiffs' § 555(b) claim and treat it on the merits."); *Bartolini,* 226 F.Supp.2d at 354 (finding that plaintiffs' claim "cannot be said to be patently without merit" and concluding that "subject matter jurisdiction exists based on 28 U.S.C. § 1331 in conjunction with 5 U.S.C. § 555(b)").

41. *Cordoba,* 78 F.Supp.2d at 244 (quoting *Bell,* 327 U.S. at 682–84, 66 S.Ct. 773).

42. *Bartolini,* 226 F.Supp.2d at 354 (quoting *New York Dist. Attorney Investigators Police Benevolent Ass'n v. Richards,* 711 F.2d 8, 10 (2d Cir.1983)).

43. *See* Compl. ¶ 15.

44. *Rahman,* 884 F.Supp. at 784.

immediately available to him at the time his application is filed.[45]

Thus, an application for adjustment of status may only be filed if an immigrant visa is "immediately available" to the alien. Because "an unlimited number of immigrant visas are allotted to immediate relatives of U.S. citizens, an immigrant visa is always immediately available to such aliens."[46] For purposes of the Act, an "immediate relative" means a child, spouse, or parent of a citizen of the United States.[47] Accordingly, an "alien who has been admitted to the United States, meets the other requirements for an adjustment, and is an immediate relative of a U.S. citizen, can file an adjustment of status application concurrently with his [ ] relative's petition to classify the alien as an immediate relative."[48]

### 2. Defendants' Motion to Dismiss

■■ As an initial matter, defendants contend that the delay in adjudication is not unreasonable because "the clock has not yet begun to run on the adjudication of Kim's adjustment application."[49] This is so because, according to defendants, "an adjustment application is not considered properly filed until the applicant has an immigrant visa 'immediately available' to

him—which Kim nowhere alleges to be the case."[50] But the visa petition (Form I–130) and adjustment application (Form I–485) attached to his Complaint suggest that Kim *does* aver that an immigrant visa was immediate available to him and as such, that his application was "properly filed." Kim notes on his Form I–485 that he is "applying for adjustment to permanent resident status because [ ] an immigrant petition giving [him] an immediately available immigrant visa number has been approved . . . *or* a relative . . . visa petition filed with this application will give [him] an immediately available visa number if approved."[51] Thus, Kim alleges that he filed the visa petition and adjustment application "concurrently," which he is entitled to do given his claimed status as the immediate relative of a U.S. citizen.[52] At a later stage in the proceedings it may be shown that Kim did not, in fact, file these documents concurrently, or otherwise improperly submitted his paperwork indicating that the "clock" has not yet started to run. However, the Complaint adequately alleges that Kim properly filed his application and accordingly, that the complained-of delay dates back to the submission of his Form I–485.

---

**45.** 8 U.S.C. § 1255.

**46.** Austin T. Fragomen, Jr., Alfred J. Del Rey, Jr., & Steven C. Bell, 2 Immigration Procedures Handbook § 13:4, at 13–17 (2003 ed.); *see also* 8 U.S.C. § 1151(b)(2)(A)(i) (describing aliens, including the immediate relatives of U.S. citizens, who are not subject to the numerical limitations on visas).

**47.** *See* 8 U.S.C. § 1151(b)(2)(A)(i).

**48.** Fragomen, Del Rey & Bell, *supra* note 46, § 13.4, at 13–17; *see also* Ira J. Kurzban, Immigration Law Sourcebook 657 (9th ed.2004); 8 C.F.R. § 245.2(a)(2)(B) ("If, at the time of filing, approval of a visa petition filed for classification under section 201(b)(2)(A)(i) . . . of the [INA] would make a

visa immediately available to the alien beneficiary, the alien beneficiary's adjustment application will be considered properly filed whether submitted concurrently with or subsequent to the visa petition, provided that it meets the filing requirements contained in parts 103 and 245."). For a description of when the visa petition and adjustment application are considered to be "concurrently filed," *see* 8 C.F.R. § 245.2(a)(2)(i)(C).

**49.** Defs. Mem. at 14; *see also* Reply Mem. at 6.

**50.** *Id.*

**51.** Form I–485 for Dae Hyun Kim.

**52.** *See* Pl. Opp. at 7.

Defendants next suggest that Kim has not stated a cognizable cause of action under the APA because the Supreme Court [in *INS v. Miranda*] has "instructed that evidence of the passage of time, standing alone, cannot support such a claim."[53] But this analogy to *Miranda* is flawed. In that case, the petitioner sought review of the INS's decision denying his adjustment application. The operative question was whether the government's "affirmative misconduct" prevented it from denying citizenship under a theory of equitable estoppel.[54] To prevail in such a case, the burden on the petitioner is a heavy one.[55] The difference between these cases is clear—Kim's claim is not one of equitable estoppel and he is not attempting to force the CIS to, in essence, reverse a decision denying citizenship.[56] Rather, he is requesting that the CIS *adjudicate* his application within a reasonable time.

Moreover, although there is no statutory or regulatory deadline by which the CIS *must* adjudicate an application, at some point, defendants' failure to take any action runs afoul of section 555(b). Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic—the CIS simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA.

Thus, I now consider whether, under any set of facts that could be proved consistent with Kim's allegations, defendants' delay in adjudicating his adjustment application is "unreasonable" under the APA. The Second Circuit has observed that: "In determining reasonableness [for purposes of section 6 of the APA], we look to the source of delay—*e.g.*, the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding."[57] Although it is entirely possible that this delay is reasonable, there is insufficient information upon which to base such a determination at this stage in the proceedings.[58] Neither party has offered

---

53. Defs. Mem. at 13 (citing 459 U.S. at 15, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982)).

54. *See Miranda*, 459 U.S. at 16, 103 S.Ct. 281.

55. *See, e.g., Jefrey v. INS*, 710 F.Supp. 486, 489 n. 3 (S.D.N.Y.1989) ("The standard for prevailing in an estoppel case is high."); *see also, e.g., Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.").

56. *See also Cordoba*, 78 F.Supp.2d at 245 ("That case dealt with the question [of] whether the petitioner there had established affirmative misconduct on the part of the government, a burden that arguably does not rest on the [plaintiff] here.").

57. *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir.1999).

58. For instance, it is conceivable that the concurrent filing of the visa petition and adjustment application has lengthened the processing time for Kim's Form I–485. *See generally Burger v. McElroy*, No. 97 Civ. 8775, 1999 WL 787661, at *3 (S.D.N.Y. Sept.30, 1999) ("For an alien who seeks to adjust his status while an immediate relative petition filed on his behalf is pending, the adjustment of status application and the immediate relative petition are necessarily related because approval of the immediate relative petition is the means by which the alien is eligible to receive an immigrant visa and by which the alien has an immigrant visa immediately available to him. Although the immediate relative petition and the adjustment of status application may require a review of similar information, there are different procedures for approval of immediate relative petitions and adjustment of status applications."). It is also possible that Kim's application presents complicated

an explanation for the delay and as such, it cannot be said that Kim will be unable to prove any set of facts, consistent with his allegations, entitling him to relief.[59] Accordingly, defendants' motion to dismiss under Rule 12(b)(6) is denied.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied in its entirety. The Clerk of the Court is directed to close this motion [# 8 on the docket sheet]. A conference will be held in Courtroom 15C on August 9, 2004 at 4:30 p.m.

SO ORDERED.

issues, requiring a greater time commitment from the CIS.

**59.** By comparison, other courts confronted with similar issues have had information warranting dismissal either under Rule 12 or Rule 56 (summary judgment). *See, e.g., Batista,* 2000 WL 204535, at *4 ("In short, Batista has been a major source of the delay in the processing of his application. The delay that has taken place until now thus has not been unreasonable, and plaintiffs' § 555(b) claim fails") (Rule 56 motion); *Bartolini,* 226 F.Supp.2d at 355 ("Given the particular facts and circumstances of this case, the delays that have taken place are clearly reasonable, and the complications arise to a significant degree from the suspicious circumstances created by Latif's own actions.") (Rule 12 motion considering evidence proffered by defendants in support of the motion); *see also, e.g., Karan,* 2003 WL 21209769, at *2 (dismissing for lack of subject matter jurisdiction, but identifying a number of reasons for which the INS's delay was legitimate, even if the court had jurisdiction) (Rule 12 motion).