Andrea ESPIN, Petitioner,

v.

Mary Ann GANTNER, USCIS District Director, .et al.   Respondent.

No. 05 CIV. 4595(LAP).

United States District Court,
S.D. New York.

July 19, 2005.

**262**

Donald H. London, Law Office of Donald H. London, Yonkers, NY, for Petitioner.

Frank James Loprest, Jr., U.S. Attorney's Office, New York City, for Respondent.

## ORDER

PRESKA, District Judge.

Andrea Espin ("Espin", "Petitioner"), has submitted a petition for a Writ of Mandamus to the Court, requesting, among other things, that the Court direct Respondents, Mary Ann Gantner, United States Citizenship and Immigration Services ("USCIS") District Director, Department of Homeland Security Secretary and Office of the General Counsel (collectively, "Respondents"), to accord her lawful permanent resident status. For the reasons outlined below, Espin's application is denied and her underlying petition is dismissed.

### I. *Background*

Andrea Espin, a native and citizen of Ecuador, claims that in February 2002 she submitted an application ("adjustment application" or "I–485 application") to the New York District office of the former Immigration and Naturalization Service ("INS")[1] seeking a discretionary adjustment of her immigration status to that of lawful permanent resident of the United States, pursuant to § 245(a) of the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1255(a). (Petition for a Writ of Mandamus ("Petition") dated April 9, 2005, ¶ 7.) Espin claims that she was eligible for adjustment because her mother married a United States citizen. *Id.* Espin claims she was

1. As of March 1, 2003, the former INS ceased to exist as an agency within the United States Department of Justice, and its functions respecting applications for immigration benefits (such as the application for adjustment of immigration status at issue herein) were transferred to United States Citizenship and Immigration Services ("CIS") in the United States Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. 107–296, § 471(a), 116 Stat. 2135, 2205 (Nov. 25, 2002); 68 Fed.Reg. 10922–01, 2003 WL 735330 (Mar. 6, 2003); *see also* Brown v. Ashcroft, 360 F.3d 346, 348 (2d Cir.2004).

interviewed by an officer of the CIS (as the INS's successor agency) in January 2004. *Id.*, ¶ 8. She claims she made several inquiries of the CIS regarding her application. *Id.*, ¶ 10–16. She claims the CIS took a set of her fingerprints in connection with her application on April 15, 2005. *Id.*, ¶ 17.[2]

Less than one month later, on May 9, 2005, Espin filed the instant action, seeking an Order "direct[ing] Respondent immediately to accord lawful permanent resident status to Petitioner within thirty (30) days." (Petition, "Wherefore" clause, ¶ 2.) On or about that date, Espin also submitted to the Court a proposed Order to Show Cause and application for injunctive relief.

## II. *Standard of Review*

### 1. *The Law Governing Adjustment of Immigration Status*

Prior to 1952, in order to become permanent residents, all "aliens in the United States who were not immigrants had to leave the country and apply for an immigrant visa at a consulate abroad." *Elkins v. Moreno*, 435 U.S. 647, 667, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978); *accord Randall v. Meese*, 854 F.2d 472, 473 (D.C.Cir.1988) ("to achieve reclassification from nonimmigrant to permanent resident status, [an] alien had to leave the country and, in the ordinary course, apply to a United States consular officer abroad for an immigrant visa") (citations omitted). Recognizing, however, that there were "aliens in this country in nonimmigrant status who could show they qualified for immigrant status and who wished to avoid a costly trip out of the country merely to obtain a visa," *Choe v. INS*, 11 F.3d 925,

928 (9th Cir.1993), Congress created the mechanism for adjusting one's status contained in INA § 245, 8 U.S.C. § 1255(a). *See INS v. Bagamasbad*, 429 U.S. 24, 25, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976) (per curiam)(statute enacted so that "such aliens would not inevitably be required to leave the country and apply to a United States consul in order to obtain permanent-resident status").

Thus, in INA § 245, Congress gave the Attorney General discretion to adjust the status of an eligible alien already present in the country to that of a lawful permanent resident. *See* 8 U.S.C. § 1255(a)(i). A status adjustment applicant must meet several prerequisites: (1) he or she must have been "inspected and admitted or paroled" into the United States; (2) he or she must have submitted an application for adjustment of status; (3) an immigrant visa must be "immediately available" to the alien at the time the adjustment application is filed; and (4) he or she must be "admissible to the United States for permanent residence." 8 U.S.C. § 1255(a); 8 C.F.R. §§ 245.1(a) & 245.2(a)(2004). In addition, an adjustment applicant must also demonstrate that he or she merits status adjustment in the exercise of the Attorney General's discretion. *See* 8 U.S.C. § 1255(a); *see, e.g., Elkins*, 435 U.S. at 667, 98 S.Ct. 1338 ("adjustment of status is a matter of grace, not right").

### 2. *The Law Governing Injunctions Against the Government*

As an initial matter, because Espin seeks to enjoin governmental action taken in the public interest pursuant to a statutory or regulatory scheme, injunctive relief

---

**2.** In 1994, Congress amended INA § 245 to require that INS obtain "full fingerprint checks through the [FBI] for all individuals over sixteen years of age adjusting immigration status in the United States." *See* Department of State and Related Agencies Appropriations Act of 1995, § 506(d), Pub.L. No. 103–317, Title V, § 506(d), 108 Stat. 1725, 1766 (1994).

cannot be granted to her unless she establishes both irreparable injury and a likelihood of success on the merits of her claim.[3] *See Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir.1996); *see also Able v. United States,* 44 F.3d 128, 130 (2d Cir.1995)(heightened standard when seeking to enjoin governmental action "reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly"). Moreover, because Espin seeks mandatory injunctive relief, the standard is even higher: she must establish a "substantial likelihood of success on the merits." *See Hertz Corp. v. Avis, Inc.,* 867 F.Supp. 208, 211–12 (S.D.N.Y.1994) ("burden on the moving party is heightened when the movant … seeks to disturb the status quo by ordering affirmative relief").

## III. *Discussion*

In fact, Petitioner has not demonstrated any "likelihood of success" on the merits of her claims. Espin has failed to: (1) establish that this Court has subject matter jurisdiction over her claims; (2) state a

claim upon which the Court may grant relief; or (3) demonstrate irreparable harm.[4]

### 1. *Jurisdiction to Compel Government Action*

■ It is well settled that "[t]he burden of proving jurisdiction is on the party asserting it." *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996) (citation omitted). Thus, the "well-pleaded complaint" rule requires Espin to state the basis for this Court's subject matter jurisdiction on the face of her petition. *See, e.g., Beneficial National Bank v. Anderson,* 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); *City of Rome v. Verizon Communications, Inc.,* 362 F.3d 168, 173 (2d Cir.2004).[5]

Espin has not met this burden. As an initial matter, in seeking a "writ of mandamus," Espin prays for a form of relief abolished over seventy years ago with the promulgation of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 81(b) ("The writs of scire facias and mandamus are abolished."); *In re Nagy,* 89 F.3d 115, 116 (2d Cir.1996); *Cordoba v. McElroy,* 78 F.Supp.2d 240, 242 (S.D.N.Y.2000); *see*

---

**3.** Though Petitioner argues that the standard for injunctive relief should not apply to her application, she does so without legal citation. The bare assertion that "the U.S. Attorney's categorization that Espin is seeking Injunctive Relief is therefore wrong and misleading" is insufficient. (Def's. Rep., 4.)

**4.** As a general matter, I note that though Petitioner submitted a six-page letter reply to Respondent's opposition, she cites only two cases in support of her arguments, one from the District of New Mexico and one from the Northern District of Illinois. Both are addressed shortly. The majority of the letter reply alternates between speculation and irrelevance, *i.e.,* "[a]s far as can be determined, no one at 26 Federal Plaza has even bothered to look for the Espin file," "[w]hat proof does the government offer that Espin's file is not lost," "Petitioner's sister was in the same

position as petitioner and she received her permanent residency status, along with her mother" and "I would also point out that in the hundreds of adjustment of status cases who are in the position that Espin is in, none of my clients have ever failed to obtain their permanent residency status." (Def's. Reply, 2–3.) Obviously, none of these comments justifies legal analysis.

**5.** In actions against the Government, the rule applies with greater force, inasmuch as the United States enjoys sovereign immunity from suit in the absence of a specific statutory consent to be sued. *See, e.g., Office of Personnel Management v. Richmond,* 496 U.S. 414, 432, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *Presidential Gardens Assoc. v. United States ex rel. Sec'y of Housing and Urban Development,* 175 F.3d 132, 139 (2d Cir.1999).

*also* Fed.R.Civ.P. 1 (Rules "govern procedure in the United States district courts in all suits of a civil nature"); Fed.R.Civ.P. 2 (Rules establish "one form of action to be known as [a] 'civil action'") (quotation marks in original).

It is also well-settled that mandamus relief is extraordinary and should not issue unless the action which a plaintiff seeks to compel is "subject to positive command, plainly described and free from doubt." *Fifth Avenue Peace Parade Committee v. Hoover*, 327 F.Supp. 238, 242 (S.D.N.Y. 1971); *see also Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). However, as has been noted, the process of immigration status adjustment is not susceptible to mandamus jurisdiction because it is wholly discretionary with the Attorney General. *See* 8 U.S.C. § 1255(a); *see also Elkins*, 435 U.S. at 667, 98 S.Ct. 1338; *Randall*, 854 F.2d at 473; *Jain v. INS*, 612 F.2d 683, 687 (2d Cir.1979)(calling adjustment "extraordinary relief"). The Supreme Court long ago held that "[m]andamus ... cannot be used to compel or control a duty in the discharge of which by law [a federal officer] is given discretion." *Work v. United States ex rel. Rives*, 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925). Likewise, the Second Circuit has stated:

> [M]atters solely within the INS's discretion ... are not reviewable under ... 28 U.S.C. § 1361 .... Aside from our powerlessness to intervene, the judicial creation of such a duty would have the potential for mischievous interference with the functioning of already overburdened administrative agencies.

*Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1182 (2d Cir.1978).

Thus, in recent years, judges in this District have consistently declined to exercise mandamus jurisdiction over adjustment-related claims and have dismissed them. *See, e.g., Vladagina v. Ashcroft*, No. 00 Civ. 9456(DAB)(THK), 2002 WL 1162426, at *4 (S.D.N.Y. April 8, 2002), *appeal dismissed*, No. 02–6120, 2004 WL 1638248 (2d Cir. April 21, 2004); *Saleh v. Ridge*, 367 F.Supp.2d 508, 511 (S.D.N.Y. 2005); *Zheng v. Reno*, 166 F.Supp.2d 875, 880–81 (S.D.N.Y.2001); *Sadowski v. U.S. INS*, 107 F.Supp.2d 451, 453 (S.D.N.Y. 2000); *Maldonado–Coronel v. McElroy*, 943 F.Supp. 376, 381 (S.D.N.Y.1996); *Rahman v. McElroy*, 884 F.Supp. 782, 787 (S.D.N.Y.1995); *Zaytsev v. Gantner*, No. 04 Civ. 7101(WHP), 2004 WL 2251665, at *1 (S.D.N.Y. Sept. 24, 2004); *Riley v. Gantner*, 03 Civ. 2835(GEL), 2003 WL 22999487, at *4 (S.D.N.Y. Dec. 22, 2003); *Karan v. McElroy*, No. 02 Civ. 6678(JGK), 2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003); *Yilmaz v. McElroy*, No. 00 Civ. 7542(RCC), 2001 WL 1606886, at *3 (S.D.N.Y., Dec. 17, 2001); *Ying Wang v. Reno*, No. 01 Civ. 1698(BSJ), 2001 WL 1150343, at *2 n. 1 (S.D.N.Y. Sept. 27, 2001); *Batista v. U.S. INS*, No. 99 Civ. 2847(MBM), 2000 WL 204535, at *3 (S.D.N.Y. Feb. 22, 2000); *Cobas v. INS*, No. 99 Civ. 9378(LAK), 1999 WL 1627349, at *1 (S.D.N.Y. Sept. 30, 1999); *Xin–Ming Zheng v. McElroy*, No. 98 Civ. 1772(LBS), 1998 WL 702318, at *5 (S.D.N.Y. Oct. 7, 1998). Similarly, this Court does not have jurisdiction over Espin's claims, and her petition is accordingly dismissed.[6]

---

**6.** Petitioner offers the only legal authority present in her reply in opposition to this argument. However, *Yue Yu v. Douglas Brown*, 36 F.Supp.2d 922 (D.N.M.1999), and *Paunescu v. INS*, 76 F.Supp.2d 896 (N.D.Ill.1999) are insufficient for several reasons. First,

two out-of-Circuit cases cannot, by themselves, overcome the overwhelming in-Circuit authority cited by Respondents. Additionally, both cases reference a three-part test for determining jurisdiction: (1) a clear duty owed to [the petitioner] by the agency; (2) a duty

## 266

### 2. Petitioner Fails to State a Cognizable Claim

■ Petitioner also fails to state a cognizable claim upon which relief can be granted. Although she appears to contend that the length of time that her adjustment application has been pending indicates there has been an unreasonable delay, *see, e.g.,* Petition ¶ 10, the Supreme Court has held that evidence of the passage of time cannot, standing alone, support such a claim. *See INS v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982). No statute or regulation requires the Government to process adjustment applications within any particular time. *See, e.g., Cordoba,* 78 F.Supp.2d at 244; *Ortiz v. INS,* No. 99 Civ. 0705(WHP), 2000 WL 728145 at *2 (S.D.N.Y. Jan. 18, 2000); *Mesallum v. INS,* No. 99 Civ. 3997(LAK), 1999 WL 1627348 at *1 (S.D.N.Y. Oct. 14, 1999); *Alomari v. Reno,* No. 97 Civ. 6837(DAB), 1997 WL 724815 at *3 (S.D.N.Y. Nov. 19, 1997).

Moreover, apart from the passage of time, Espin has given no reason for the Court to compel the CIS to devote immediate attention to her adjustment application, particularly given the CIS's limited resources and substantial caseload. In *Miranda,* the Supreme Court noted that the INS received 203,000 applications for all forms of immigration relief nationwide during the year in question, 1976. *See* 459 U.S. at 18, 103 S.Ct. 281. By contrast, by the year 2004, the number of pending applications in the INS's New York District *alone* approached that number. *See e.g., Ortiz,* 2000 WL 728145 at *1 (noting that as of January 2000, INS's New York District had over 250,000 pending applications for immigration relief). Thus, this case is similar to one in which Judge Swain recently held that an alien's "request for adjudication [of his adjustment application] disregards entirely the fact that there are 160,000 applications pending aside from his own." *Saleh,* 367 F.Supp.2d at 513.[7]

### 3. Petitioner Has Not Established Irreparable Harm

■ Finally, Espin faces no irreparable harm. For instance, although she claims she needs lawful status to apply for college loans, *see, e.g.,* Letter dated June 10, 2005, she does not explain that such harm is irreparable. She also does not describe any exigent circumstance necessitating immediate consideration of her application, such as a looming event that threatens to oust her eligibility for adjustment. *Cf. Maldonado–Coronel,* 943 F.Supp. at 381 (rejecting minor alien's claim that INS was obligated to adjudicate his adjustment ap-

---

which is mandatory and not discretionary; and (3) a clear right to relief. *Yue Yu,* 36 F.Supp.2d at 930; *Paunescu,* 76 F.Supp.2d at 901.

Here, before even analyzing the first and third elements, Petitioner simply has no chance of establishing the second. The Supreme Court and Second Circuit have found the process of immigration status adjustment to be wholly within the discretion of the Attorney General, and therefore *not* mandatory. *See* 8 U.S.C. § 1255(a); *see also Elkins,* 435 U.S. at 667, 98 S.Ct. 1338; *Randall,* 854 F.2d at 473; *Jain v. INS,* 612 F.2d 683, 687 (2d Cir.1979).

7. Here, Petitioner argues that "Espin is merely requesting the UCSIS to make a decision on her application and the government's response is basically that they are not accountable to anyone under any circumstances and they can take as long as they want." (Def's. Rep., 5.) Aside from being made without citation, the observation is also incorrect. Petitioner clearly requests in her Petition that the Court: "direct Respondent immediately to accord lawful permanent resident status to Petitioner within thirty (30) days of today's date." (Petition, "Wherefore" clause, ¶ 2.) Petitioner does not, therefore, request just any decision from Respondents but rather requests a decision in Petitioner's favor.

plication, which was derivative of his parent's, before he "aged out" of eligible status on his impending 21st birthday); *Zheng v. INS,* 933 F.Supp. 338, 341 (S.D.N.Y.1996)(notwithstanding minor applicant's looming "age out," INS had statutory obligation *not* to jump him ahead of other adjustment applicants); *Rahman,* 884 F.Supp. at 787 (despite looming expiration of visa "lottery," entrants had no protected right in order of adjudication of adjustment applications based on lottery entries); *Zaytsev,* 2004 WL 2251665 at *1 (same). Indeed, a judge in this District recently held that the Court lacked mandamus jurisdiction to direct the CIS to adjudicate an alien's adjustment application prior to his removal from country—certainly a greater harm than that faced by Espin. *See Hanif v. Gantner,* 369 F.Supp.2d 502, 509–11 (S.D.N.Y. May 11, 2005).[8]

More importantly, Espin acknowledges that the CIS, far from refusing to process her application, has taken recent steps to complete its adjudication, such as taking her fingerprints on April 15, 2005. (Petition ¶ 17.) Thus, she has failed to demonstrate irreparable harm, making injunctive relief inappropriate. *See, e.g., Kai Wu Chan,* 916 F.Supp. at 1299 (where plaintiffs claimed they would be "left in limbo" pending adjudication of their adjustment applications, holding that injury was "by no means 'irreparable,'" and complaint was dismissed); *cf. Haidar v. Coomey,* 401 F.Supp. 717, 720 (D.Mass.1974)("All the Immigration and Naturalization Service has done is to require plaintiff to await his turn. Mandamus is not proper on these facts.").

## IV. *Conclusion*

Accordingly, Petitioner's application for a Writ of Mandamus (Docket No. 1) is denied and the underlying petition is dismissed. The Clerk of the Court shall mark this matter closed and all pending motions denied as moot.

**SO ORDERED**

---

8. Petitioner essentially concedes this point in her reply letter: "While it is true that this is not a life or death situation, Espin is unreasonably being denied her right to attend a college of her choice because she is unable to obtain any educational loans to attend college." (Def's. Rep., 6.) When compared to the potential harms that courts have found insufficient to meet the irreparable harm threshold, Petitioner's alleged harm falls well short. *See Maldonado–Coronel,* 943 F.Supp. at 381; *Zheng,* 933 F.Supp. at 341; *Rahman,* 884 F.Supp. at 787; *Zaytsev,* 2004 WL 2251665 at *1.