Azat NIGMADZHANOV and Maryam Ibragimova, Plaintiffs,

v.

Robert S. MUELLER, Director, Federal Bureau of Investigation; Alberto Gonzales, Attorney General of the United States; Michael Chertoff, Secretary, the United States Department of Homeland Security; Emilio T. Gonzales, Director of the United States Citizenship and Immigration Services; Andrea J. Quarantillo, District Director, USCIS New York Field Office, Defendants.

No. 07 Civ. 1279(CM).

United States District Court, S.D. New York.

May 1, 2008.

Alexander V. Bibicheff, Brooklyn, NY, for Plaintiffs.

James Loprest, U.S. Attorney's Office, New York, NY, for Defendants.

## DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge.

### I. Introduction

This case presents an issue that has divided district courts across the country, and remains open in the Second Circuit: does a district court have jurisdiction to hear a claim against CIS for its failure to adjudicate an application for adjustment of status under Section 245 of the Immigration and Naturalization Act?

This court is persuaded by those cases that hold that a district court does have jurisdiction. Because Plaintiff's claim is not patently without merit, Defendants' motion to dismiss is DENIED.

## II. Background

Plaintiff Azat Nigmadzhanov, a United States citizen, and Plaintiff Maryam Ibragimova, a citizen of Uzbekistan, were married on October 16, 2001. Pl.'s Opp. at 2. Weeks later, Nigmadzhanov filed a form I-130 to classify his wife, Ibragimova, as an "immediate relative" pursuant to 8 U.S.C. § 1154(a)(1)(A)(i). *Id.* As an immediate relative, Ibragimova became eligible to apply for permanent residence. Thus, at the same time Nigmadzhanov filed his I-130, Ibragimova submitted an I-485 application to the United States Citizenship and Immigration Services (CIS) to adjust her status to "lawful permanent resident," on the basis of her status as an immediate relative of a U.S. citizen. *Id.*

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255—under which Ibragimova filed her form I-485 application for adjustment of her status—provides, in pertinent part, that:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

28 U.S.C. § 1255(a). Part of the adjustment process is a mandatory name check by the FBI. The parties agree that the decision whether or not to grant (or to deny) an adjustment of status application is solely within the discretion of the Attorney General. *Id.* at 6.

Several years passed without CIS taking any action on Ibragimova's adjustment of status application. After several inquiries, Plaintiff learned that the delay was due to the FBI's failure to complete its mandatory background check. *Id.* at 2–3.

On February 16, 2007—more than five years after she submitted her application—Ibragimova filed a complaint in this court, seeking an order compelling the FBI to complete Ibragimova's background check within 30 days, and compelling CIS to complete its adjudication of her application within 30 days of receiving the FBI's report. *Id.* at 3.

Defendants now ask this court to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Defs.' Mem. at 2.

## III. Discussion

### A. *Legal principles*

■■■■ Dismissal for lack of subject matter jurisdiction is proper where the district court lacks statutory or constitutional authority to decide the case. Fed.R.Civ.P. 12(b)(1); *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Luckett v. Bure,* 290 F.3d 493, 496–97 (2d Cir.2002). In considering whether jurisdiction exists, the court must "accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (internal citations omitted). However, jurisdiction is to be shown affirmatively and the court is to refrain from "drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citing *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)).

Defendant argues that there is no statutory or constitutional basis for subject matter jurisdiction over Plaintiff's claims. Plaintiff responds by pointing to the Administrative Procedure Act, in conjunction with the federal question statute, 28 U.S.C. § 1331, as well as the Mandamus and Venue Act, 28 U.S.C. § 1361.

### 1. *Federal question statute, 28 U.S.C § 1331*

■ The federal question statute confers jurisdiction on the district courts over actions "arising under" federal law. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). "An action arises under a federal statute where the statute creates or is a necessary element of the cause of action or the plaintiff would prevail if the statute were construed one way and lose if it were construed another." *Kim v. Ashcroft,* 340 F.Supp.2d 384, 388 (quoting *Cordoba v. McElroy,* 78 F.Supp.2d 240, 243 (S.D.N.Y.2000)). This has been interpreted to mean that federal question jurisdiction exists where: "(1) the claim turns on an interpretation of the laws or Constitution of the United States and (2) the claim is not 'patently without merit.' " *Id.* (citing *Batista v. I.N.S.,* 2000 WL 204535, at *3 (S.D.N.Y. Feb.22, 2000)) (other citations and quotations omitted).

### 2. *The Administrative Procedure Act*

■ The APA alone does not confer jurisdiction on a district court to review the decision of an administrative agency, *Califano v. Sanders,* 430 U.S. 99, 106–07, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). However, "The APA in conjunction with the federal question statute, 28 U.S.C. § 1331, may provide a jurisdictional basis." *Bondarenko v. Chertoff,* 2007 WL 2693642, at *2 (citing *Batista,* 2000 WL 204535). Thus, "plaintiffs seeking specific relief are given the right to sue the government in a

federal court by the [APA] but the subject matter jurisdiction basis is the federal question statute." *Kim v. Ashcroft,* 340 F.Supp.2d at 388 (citing 14A Charles Alan Wright, Arthur C. Miller & Edward H. Cooper, Federal Practice and Procedure § 3659, at 51 (3d ed.1998)). Thus, when a plaintiff alleges that the defendant violated the APA, the court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Here, the relevant provision of the APA is 5 U.S.C. § 555(b), which states, "With due regard for the convenience and necessity of the parties or their representatives *and within a reasonable time,* each agency shall proceed to conclude a matter presented to it." (emphasis added).

### 3. *Mandamus and Venue Act*

■ Plaintiff also claims that the Mandamus and Venue Act confers jurisdiction. That Act empowers the federal courts to compel government officials to carry out "ministerial" duties. *Work v. United States ex rel. Rives,* 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925). The court's power depends on the nature of the duty sought to be compelled: relief "will issue only to compel the performance of a 'clear nondiscretionary duty.' " *Pittston Coal Group v. Sebben,* 488 U.S. 105, 121, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988) (quoting *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)).

One court recently summarized the elements of mandamus jurisdiction in the Second Circuit as follows:

Mandamus jurisdiction is "closely related to the merits of whether a writ of mandamus should issue." *Ocuto Blacktop & Paving Co., Inc. v. Perry,* 942 F.Supp. 783, 786 (N.D.N.Y.1996) (citations omitted). Three elements must exist to support a writ of mandamus: (1) a " 'clear and indisputable' " right to the

relief sought, *In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1312 (2d Cir.1988) (quotation and other citations omitted); (2) "a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available[,]" *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972) (citations omitted). Conversely, mandamus jurisdiction is inappropriate where there is no plainly defined clear nondiscretionary duty, see *Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir.1989) (citation omitted), or where there is no compelled duty owed to the plaintiff, see *Leopold v. United States Civil Service Commission,* 450 F.Supp. 154, 157 (E.D.N.Y.1978).

*Anand v. U.S. National Sec. Agency,* 2006 WL 3257430, at *5 (N.D.N.Y. Nov.9, 2006).

#### 4. *Jurisdictional bars*

Aside from the question of whether either the APA or the Mandamus Act affirmatively provides this court with subject matter jurisdiction, there is the question of whether judicial review is explicitly barred.

Section § 1252(a)(2)(B) of the INA states, in relevant part, that no court has jurisdiction to review: "(i) any judgment regarding the granting of relief under [section 245] or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security...." 8 U.S.C. § 1252(a)(2)(B).

#### 5. *Relevant authority*

The arguments about whether jurisdiction exists in the circumstances of this case have been made numerous times before district courts across the country, so while this issue remains "open" it does not remain unexplored. The district courts have split both between and within circuits, and even districts.

Recent cases that have not found jurisdiction in these circumstances include: *Qiu v. Chertoff,* 486 F.Supp.2d 412, 417–20 (D.N.J.2007) (district court does not have jurisdiction to compel CIS to adjudicate application for adjustment of status); *Li v. Chertoff,* 482 F.Supp.2d 1172, 1177 (S.D.Cal.2007) (same); *Grinberg v. Swacina,* 478 F.Supp.2d 1350, 1354 (S.D.Fla. 2007) (same); *Safadi v. Howard,* 466 F.Supp.2d 696, 699–700 (E.D.Va.2006) (same); *Shen v. Chertoff,* 494 F.Supp.2d 592, 595 (E.D.Mich.2007) (same); *Liberty Fund. Inc. v. Chao,* 394 F.Supp.2d 105, 115 (D.D.C.2005) (rejecting "the handful of unpublished district court decisions in other circuits that have granted mandamus petitions based solely on the length of a processing delay").

Recent cases that have found jurisdiction in these circumstances include: *Gershenzon v. Gonzalez,* 2007 WL 2728535 (W.D.Pa. Sept.17, 2007) (finding jurisdiction); *Liu Duan v. Zamberry,* 2007 WL 626116 (W.D.Pa. Feb.23, 2007) (same); *Yong Tang v. Chertoff,* 493 F.Supp.2d 148 (D.Mass.2007) (same); *Dib v. Chertoff,* 2007 WL 2155642 (M.D.Fla. July 26, 2007) (same); *Han Cao v. Upchurch,* 496 F.Supp.2d 569 (E.D.Pa.2007) (same); *Bondarenko v. Chertoff,* 2007 WL 2693642 (W.D.N.Y. Sept.11, 2007) (same); *Koren v. Chertoff,* 2007 WL 1431948 (D.Conn. May 14, 2007) (same); *Huang v. Gonzales,* 2007 WL 1302555 (W.D.Wash. May 2, 2007) (same); *Song v. Klapakas,* 2007 WL 1101283 (E.D.Pa.2007) (same); *Loo v. Ridge,* 2007 WL 813000 (E.D.N.Y. Mar.14, 2007) (same); *Liu v. Novak,* 2007 WL 2460425 (D.D.C. Aug.30, 2007) (same); *Tang v. Chertoff,* 2007 WL 2462187 (E.D.Ky. Aug.29, 2007) (same).

Courts in the Southern District of New York have likewise been divided. *Compare Espin v. Gantner,* 381 F.Supp.2d 261, 265 (S.D.N.Y.2005) (Preska, J.) (jurisdic-

tion does not exist); *Vladagina v. Ashcroft,* 2002 WL 1162426 (S.D.N.Y. April 8, 2002) (Batts, J.) (same); *Hui Jin Zheng v. Reno,* 166 F.Supp.2d 875, 879 (S.D.N.Y. 2001) (Koeltl, J.) (same) *with Saleh v. Ridge,* 367 F.Supp.2d 508 (S.D.N.Y.2005) (Swain, J.) (jurisdiction exists); *Kim v. Ashcroft,* 340 F.Supp.2d 384, 389 (S.D.N.Y. 2004) (Sheindlin, J.) (same); *Batista v. I.N.S.,* 99 Civ. 2847, 2000 WL 204535, at *4 (S.D.N.Y. Feb.22, 2000) (Mukasey, J.) (same).

It is hard to say which view has taken greater hold in this district. The court in *Espin v. Gantner* correctly notes that mandamus jurisdiction generally has not been found, 381 F.Supp.2d at 265 (collecting cases). However, Plaintiffs have been more successful in arguing that federal question jurisdiction under § 1331 exists to hear a meritorious claim for violation of 5 U.S.C. § 555(b). *See, e.g., Kim v. Ashcroft,* 340 F.Supp.2d at 392–94; *Saleh v. Ridge,* 367 F.Supp.2d at 512 ("Under these circumstances, Plaintiff' [§ 555] claim is not patently without merit, and the Court has jurisdiction of Plaintiffs APA claim pursuant to 28 U.S.C. § 1331.") *Batista,* 2000 WL 204535, at *4 ("I will exercise § 1331 jurisdiction over Plaintiff' § 555(b) claim and treat it on the merits."); *see also Cordoba v. McElroy,* 78 F.Supp.2d 240 (S.D.N.Y.2000) (Kaplan, J.) (refusing to dismiss for lack of jurisdiction, relying on 28 U.S.C. § 1331 and 5 U.S.C. § 555). *Kim,* which is directly on point, distinguishes many of the cases relied on by *Espin.*

No Circuit Court of Appeals has addressed the issue, although at least two cases—*Grinberg v. Swacina,* 478 F.Supp.2d 1350 (S.D.Fla.2007) and *Feng Li v. Gonzalez,* 2007 WL 1303000 (D.N.J. May 3, 2007)—are pending appeal, in the Eleventh and Third Circuits, respectively.

The above-cited cases split on a number of questions. Three of particular importance have been identified.

First, does CIS have a nondiscretionary duty to adjudicate adjustment of status applications at all? If there is no such duty, and the agency has discretion whether or not to adjudicate, then clearly there could be no jurisdiction under either statute, as wholly discretionary acts (1) cannot be compelled under the Mandamus Act, and (2) are removed from judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii). *Compare Espin v. Gantner,* 381 F.Supp.2d at 265 ("The process of immigration status adjustment is not susceptible to mandamus jurisdiction because it is wholly discretionary with the Attorney General.") *with Kim v. Ashcroft,* 340 F.Supp.2d at 389 ("Whether to adjudicate an adjustment application [as opposed to whether to grant or deny an application] is not discretionary, but governed by [§ 555], requiring the CIS to take action on a matter presented to it 'within a reasonable time.' ").

Second, even if there is a duty to adjudicate at some point, must that duty be exercised "within a reasonable time"? *Compare Li v. Chertoff,* 482 F.Supp.2d at 1177 (no jurisdiction to compel adjudication of I–485 application under the mandamus statute or the APA because "no statute or regulation specifies a time period within which USCIS must act") and *Hui Jin Zheng v. Reno,* 166 F.Supp.2d at 879 (holding that "there is no requirement that [an application to adjust immigration status] be decided within a specific period of time"), *with Yong Tang v. Chertoff,* 493 F.Supp.2d 148, 156 ("To defer to agencies on pace of adjudication would be effectively to lift the duty to adjudicate applications altogether.").

Finally, do the jurisdiction-stripping provisions of the INA foreclose judicial review? *Compare Safadi v. Howard,* 466

F.Supp.2d at 700 (concluding that " § 1252(a)(2)(B)(ii) precludes judicial review of any 'action,' meaning any act or series of acts, included within the ongoing adjudication process and the pace at which that action proceeds."), *with Koren v. Chertoff,* 2007 WL 1431948, at *5 (holding that § 1252(a)(2)(B)(ii) does not divest court of subject matter jurisdiction over claim that adjudication of adjustment of status application has been unreasonably delayed).

The parties have briefed only the first question, and that only to a limited extent. Fortunately, I have been assisted by the thorough scholarship of Lauren Sasser, a second year law student at Fordham University School of Law (and former intern), whose student note exhaustively details the statutory and case law on this very issue. Sasser, Note, *Waiting in Immigration Limbo: The Federal Court Split over Suits to Compel Action of Stalled Adjustment of Status Applications,* 16 Fordham L.Rev. 2511 (2008) (collecting and analyzing cases). In addition, the many district court decisions cited above have laid out the competing positions. For a particularly thorough recounting of the case law in this District, see Judge Scheindlin's opinion in *Kim v. Ashcroft,* 340 F.Supp.2d at 389–91.

This court is not inclined to reinvent the wheel. For the reasons discussed below, I find persuasive those cases that conclude that jurisdiction exists under 5 U.S.C. § 555(b) and 28 U.S.C. § 1331. I therefore conclude that the court has subject matter jurisdiction to hear Ibragimova's claim.

### B. *The court has APA/federal question jurisdiction over Ibragimova's claim*

I address the three questions identified in turn.

As to the first question that has divided the courts, I am persuaded that CIS has a non-discretionary duty to adjudicate adjustment of status applications. This duty can be implied from Congress' explicit delegation of the power (and responsibility) to process form I–485 applications, in conjunction with the general § 555(b) requirement that an agency complete its delegated tasks with a reasonable time. Of course, the Attorney General has unfettered (and hence, unreviewable) discretion whether *to grant or deny* an application. However, one cannot infer from that the existence of discretion *to never decide it at all. See Kim v. Ashcroft,* 340 F.Supp.2d at 389 (noting this distinction). The absence of a duty to adjudicate at all defies logic. "The secretary cannot be charged with immigration administration and simultaneously have no duty to administrate. Such a result is irrational." Sasser, *supra,* 76 Fordham L.Rev. at 2554.

Even courts that find no jurisdiction concede, either implicitly or explicitly, that CIS has *some* duty to adjudicate applications for adjustment of status. For instance, in *Safadi v. Howard*—where the Court concluded that jurisdiction did not exist—the Court explicitly refused to address "whether jurisdiction would exist in a district court to review plaintiff's case where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application," since the case before it did not present such facts. 466 F.Supp.2d at 700. The case that was not before the Safadi Court *is* the case before this Court.

The second question that divides courts is whether the APA imposes a "reasonable time" requirement on the decision-making process. Courts that conclude that it does not point to the absence of any specific time limit for action in Sec-

tion 245, contrasting this with the explicit time limits for actions found in other sections, especially 8 U.S.C. § 1447(b) (applications for naturalization). *See, e.g., Grinberg v. Swacina,* 478 F.Supp.2d at 1352 ("That Congress did not [provide definite time limits on adjudication] here reflects its intent to leave the pace of adjudication discretionary with the United States Attorney General and outside the scope of judicial review."). Assuming that CIS has a mandatory duty to take action at some point, these courts conclude that this duty remains discretionary in the sense that Section 245 provides "no meaningful standard against which to judge the agency's exercise of discretion." Such a finding precludes judicial review under the APA.

I reject this argument, and accept the reasoning of the cases that find that CIS's duty is subject to a requirement of reasonableness. The duty to decide "within a reasonable time" can be found in § 555(b), the very statute on which Plaintiff bases her suit. Furthermore, a duty to decide that is unconstrained by a reasonableness requirement makes little sense. "The 'duty to decide' becomes no duty at all if it is accompanied by unchecked power to decide when to decide." *Razaq v. Poulos,* 2007 WL 61884, at *3 (N.D.Cal. Jan.8, 2007); *see also Saleem v. Keisler,* 520 F.Supp.2d 1048, 1055 (W.D.Wis.2007) ("If defendants have an obligation to decide applications but have unfettered discretion to put off deciding an application for as long as they want, how could the duty to decide ever be judicially enforced?"); *Duan v. Zamberry,* 2007 WL 626116, at *4 (W.D.Pa. Feb.23, 2007) ("The danger posed by non-reviewability is the 'unfettered discretion to relegate aliens to a state of limbo' leaving them to languish there indefinitely.") (internal citations and quotations omitted).

As will be seen, it is unnecessary to decide precisely what is "reasonable" at this juncture, as Plaintiff's allegation that a five (now six and one half) year delay is unreasonable is not without merit.

■ Finally, I also agree with the courts that decline to find jurisdiction precluded by Section 1252(a)(2)(B) of the INA. That law precludes review of "(i) any judgment regarding the granting of relief under section ... 245 or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title to be in the discretion of the Attorney General or the Secretary of Homeland Security of this title."

As I have already decided that there is a nondiscretionary duty to decide on an application for adjustment of status within a reasonable amount of time, the inapplicability of these sections is manifest.

First, there has been no judgment granting relief. There has been no judgment denying relief, either. There has been no judgment. So subsection (i) is inapplicable.

Second, no statutory provision in the relevant subchapters expressly gives the government the power not to adjudicate an adjustment of status application. On the contrary, § 555(b) imposes a nondiscretionary duty to decide within a reasonable time. Therefore, subsection (ii) is inapplicable.

■ In conclusion, Plaintiff has identified a non-discretionary duty to act within a reasonable time on her application for adjustment, and review of the failure to carry out that duty is not barred by § 1252(a)(2)(B). Because she has sufficiently alleged an "unreasonable delay," she has stated a claim that turns on the application of a federal law that is not patently without merit. Therefore, she

has established federal question jurisdiction under 28 U.S.C. § 1331.

 Correspondingly, Plaintiff fails to establish mandamus jurisdiction. In light of the availability of a remedy under the APA, she cannot satisfy the third element of mandamus, which requires that "no other adequate remedy [can be] available." *Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir.1989).

## C. *Ibragimova has stated a claim*

To state a claim for relief under the APA, Plaintiff must allege (1) a clear duty owed to her under by the agency, (2) a duty which is mandatory and not discretionary, and (3) a clear right to relief. *See Yu v. Brown,* 36 F.Supp.2d 922, 930 (D.N.M.1999). As Plaintiff has sufficiently alleged that CIS had a nondiscretionary duty to adjudicate her application for adjustment within a reasonable amount of time, and has alleged a breach of that duty by pointing to a delay that is long enough, she has stated a clear claim for relief.

Plaintiff urges the court to find the delay unreasonable as a matter of law, and to compel the government to complete her application. While I am tempted to do what Plaintiff asks, I decline to find a five—or six and one half—year delay reasonable (or unreasonable) as a matter of law at this stage of the litigation, although other courts have done so, *see, e.g., Huang v. Chertoff,* 2007 WL 1831105, at *2 (N.D.Cal. June 25, 2007) (denying defendant's Rule 12 motion, and holding "On the instant record, which lacks a particular explanation as to the cause of the delay, the Court concludes that a delay of more than two years is unreasonable under the APA."); *see also Kashkool v. Chertoff,* 2008 WL 942566, at *14 (D.Ariz. Apr.7, 2008) (collecting cases). That issue is better reached on a motion for summary judgment. Defendants must submit their motion for summary judgment on or before June 9, 2008. Plaintiff shall file her cross-motion and opposition on or before June 30, 2008. Defendants' reply to Plaintiff's opposition and cross-motion is due on or before July 14, 2008. I confess that I will be very interested to see how the Government justifies the reasonableness of a delay of this length for a simple name check.

Finally, any claim by Plaintiff Nigmadzhanov must be dismissed, as the court's jurisdiction is limited to hearing Ibragimova's request that it compel CIS to adjudicate her application. I decline to dismiss Plaintiff's claim against the FBI Defendants. *See Obeid v. Chertoff,* 2008 WL 795838, at *1 (E.D.Mich. Mar.26, 2008) (FBI has duty to complete background checks by implication).

This is the decision and order of the Court.